# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# DIVISION

| | | |
|---|---|---|
| **JAMES K. DONOHUE and** | § | |
| **DRYSHOD INTERNATIONAL,** | § | |
| **LLC,** | § | |
| *Plaintiffs* | § | **No. A-22-CV-00583-LY** |
| | § | |
| **v.** | § | |
| | § | |
| **ZHENYIN "STEVEN" WANG dba** | § | |
| **DRYCODE** | § | |
| *Defendant* | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Zhenyin Wang's Combined Motion to Dismiss for Lack of Personal Jurisdiction Under Rule 12(b)(2), Insufficient Service of Process Under Rule 12(b)(5) and to Reconsider the Court's July 22, 2022, Order Under Rule 54(b), Dkt. 18, and all related briefing. After reviewing these filings and the relevant case law, the undersigned issues the following report and recommendation.

## I.      BACKGROUND

Plaintiffs James K. Donohue and Dryshod International, LLC, own and sell a brand of premium waterproof footwear and accessories under the federally registered mark DRYSHOD. Defendant Zhenyin Wang, a Chinese resident, sells an alleged knockoff version of Dryshod's footwear under the mark DRYCODE. Plaintiffs allege this mark infringes theirs, that Defendant Wang is engaging in unfair competition

1

under the Lanham Act, and have requested a preliminary injunction from the Court. The undersigned held a hearing on that issue on August 17, 2022.

Prior to the hearing, in responsive briefing, Wang raised the issue of whether he had been served. On July 18, 2022, Plaintiff had requested that the district court allow it to serve Wang through alternative service. Dkt. 8. The district court granted that motion on July 22, 2022. Dkt. 12. Wang was served through this alternative service prior to the hearing.

Additionally, prior to the hearing, Wang filed the instant motion to dismiss, in which he alleges the alternative service was insufficient, asks the Court to reconsider it, and alleges that even if properly served this Court lacks personal jurisdiction over him.

## II.    LEGAL STANDARDS

### A.    12(b)(2)

The Federal Rules of Civil Procedure allow a defendant to assert lack of personal jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(2). On such a motion, "the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). The Court may determine the jurisdictional issue "by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Id*. But when, as here, the Court rules on the motion without an evidentiary hearing, the plaintiff need only present a *prima facie* case that personal jurisdiction is proper; proof by a preponderance of the evidence is not required. *Walk*

*Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor. *Id.* Nevertheless, a court need not credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam).

**B.      12(b)(5)**

A Rule 12(b)(5) motion allows a party to file a motion to dismiss for "insufficient service of process." Fed. R. Civ. P. 12(b)(5). Under Rule 12(b)(5), a district court has "broad discretion to dismiss an action for ineffective service of process." *Styles v. McDonalds Rest.*, 2019 WL 2266636, at *2 (E.D. Tex. Jan. 28, 2019) (quoting *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 645 (5th Cir. 1994), *report and recommendation adopted*, 2019 WL 1219117 (E.D. Tex. Mar. 15, 2019). For service to be effective, a plaintiff must comply with the mandates of Federal Rule of Civil Procedure 4. *See* Fed. R. Civ. P. 4. When service is challenged, the party responsible for service bears the burden of establishing its efficacy. *Sys. Signs Supplies v. United States Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990).

### III.      DISCUSSION

**A.      Waiver Through General Appearance**

Plaintiffs argue that Wang cannot challenge service or personal jurisdiction because he entered a general appearance in this suit. In support, they point to the fact that Wang filed a response to Dryshod's motion for preliminary injunction "and did not premise his response on any substantive objection to the Court's personal

jurisdiction." Dkt. 26, at 6. Wang's response stated "Plaintiffs' Motion for preliminary Injunction must be denied for the following reasons: A) the Court lacks personal jurisdiction over Defendant to issue a preliminary injunction as no service of process has ever been effected by Plaintiffs." Dkt. 10, at 1. Plaintiffs also cite the fact that Wang filed "a sworn declaration and documentary evidence on the merits of the trademark infringement claims." Dkt. 26, at 8 (citing Dkt. 19), and his counsel appeared at the August 17, 2022, hearing to argue the preliminary injunction claim. *Id.*

Only a general appearance by a defendant results in a waiver of defect in the manner of service. *Knox v. Summers*, 7 U.S. 496, 497 (1806). The Fifth Circuit holds, "[i]n determining whether conduct is sufficient to be considered a general appearance, the focus is on affirmative action that impliedly recognizes the court's jurisdiction over the parties." *Maiz v. Virani*, 311 F.3d 334, 340 (5th Cir. 2002). This can arise from filing an answer without raising jurisdictional defects or impliedly "from a defendant's seeking, taking, or agreeing to some step or proceeding in the cause beneficial to himself or detrimental to plaintiff other than one contesting only the jurisdiction or by reason of some act or proceedings recognizing the case as in court." *Cactus Pipe & Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1108 (5th Cir. 1985) (quotation marks and citation omitted).

The undersigned finds that none of Wang's actions in this case qualify as a general appearance sufficient to waive his jurisdictional arguments. None of these actions evince the "seeking, taking, or agreeing to some step or proceeding in the

cause" required to constitute a general appearance. *Maiz*, 311 F.3d at 340. In response to the motion for preliminary injunction, Wang asserted that the Court did not have jurisdiction over him because of a lack of proper service. His counsel asserted this again, filing a motion to dismiss prior to the injunction hearing, and also asserted a lack of personal jurisdiction in this same motion and when he appeared at the preliminary injunction hearing. The undersigned finds it instructive that under Texas law, entering an appearance to defend against a petition for temporary restraining order does not constitute a general appearance. *See Graves v. Arkema, Inc.*, No. 4:17-CV-3068, 2018 WL 10158337 (S.D. Tex. Mar. 7, 2018); *Alliantgroup, L.P. v. Feingold*, No. H-09-CV-0479, 2009 WL 1109093, at \*5 (S.D. Tex. Apr. 24, 2009) (stating "Texas courts have held that appearing at a hearing on an application for a temporary restraining order, filing a motion for continuance, and filing discovery motions are not general appearances that waive personal jurisdiction objections"). Defendant did not waive his personal jurisdiction and service of process arguments.

**B.    Proper Service**

Wang first argues that he was not sufficiently served with process because he was not served pursuant to the dictates of the Hague Convention; but rather, pursuant to alternative process under Rule 4(f)(3) after Plaintiffs moved the Court to do so. Plaintiffs argue that they properly served Wang in compliance with the Court's July 22, 2022, Order, authorizing service of Wang's United States trademark counsel pursuant to Rule 4(f)(3). Dkt. 12.

Federal Rule of Civil Procedure Rule 4(f) provides three methods for serving foreign defendants, and two are relevant here. Rule 4(f)(1) states that service may be made "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Rule 4(f)(3) permits a party to use an alternative method of service if the party obtains permission of the Court, and the method is not otherwise prohibited by international agreement. *Id.*

Therefore, as long as the method of service is not prohibited by international agreement, a court has considerable discretion to authorize an alternative means of service. *See Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) ("As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are evident from the text."). "Under Rule 4(f)(3), federal courts have discretionary authority to direct service." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1239 (Fed. Cir. 2010).

"Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing" to 4(f)(1) and 4(f)(2) and is not "extraordinary relief" or a "last resort.*" In re OnePlus Tech. (Shenzhen) Co., Ltd.*, No. 2021-CV-165, 2021 WL 4130643, at *3 (Fed. Cir. Sept. 10, 2021) (citing *Nuance*, 626 F.3d at 1239). Moreover, "a plaintiff does not have to attempt to effect service under Rule 4(f)(1) or Rule 4(f)(2) prior to requesting the authorization of an alternative method of service pursuant to Rule 4(f)(3)." *Affinity Labs of Tex., L.L.C.*

*v. Nissan N. Am. Inc.*, No. WA:13-CV-369, 2014 WL 11342502, at *1 (W.D. Tex. July 2, 2014).

The parties do not dispute that China and the United States are signatories to the Hague Service Convention. Wang argues that compliance with the Hague Service Convention is mandatory in this case. However, compliance with the Hague Service Convention is mandatory only if the method of serving process involves the transmittal of documents abroad. *Sheets v. Yamaha Motors Corp.*, 891 F.2d 533, 537 (5th Cir. 1990). If service on a foreign defendant is valid and complete under state law without transmitting documents abroad, the Hague Convention is inapplicable. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988). Thus, as happened here, "neither the Hague Convention nor any other international agreement prohibits service on a foreign [entity] through its U.S. Counsel, in-house counsel, or a wholly-owned U.S. subsidiary.*" STC.UNM v. Taiwan Semiconductor Mfg. Co.*, No. 6:19-CV-00261-ADA, 2022 WL 3581182, at *1 (W.D. Tex. May 29, 2019).

Additionally, service upon U.S. counsel, designated as the trademark registered attorney, is supported by various courts. *See Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries*, 766 F.3d 74, 83 (D.C. Cir. 2014) ("A number of courts ... have sanctioned service on United States counsel as an alternative means of service under Rule 4(f)(3) without requiring any specific authorization by the defendant for the recipient to accept service on its behalf."); *see also Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 565-66 (N.D. Cal. 2012) ("Due process does not require that the individuals served on behalf of foreign defendants have

represented them or been authorized to accept service on their behalf"). Service pursuant to Judge Yeakel's order, therefore, was proper.

Moreover, Wang has full notice of the lawsuit, mooting any additional objection to service. In the context of service, due process requires only that the service method be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). In this case, Wang unquestionably had notice of this action and the opportunity to object. His attorney filed and responded to motions and appeared in person at the preliminary-injunction hearing. Wang cannot claim he did not have adequate notice of the suit.

Accordingly, the undersigned finds that service was properly effected on Wang pursuant to Rule 4(f)(3), that he had adequate notice of the suit, and this cause of action should not be dismissed on this basis.[1]

### C.  Personal Jurisdiction

Wang asserts that, as a resident of China, with no ties to Texas, he has insufficient contacts with Texas and the Court lacks personal jurisdiction over him. Plaintiffs argue that the Court possesses specific jurisdiction over Wang because he

---

[1] Wang also requests that the Court reconsider the District Court's order allowing service pursuant to Rule 4(f)(3). The reasoning applied the Wang's motion to dismiss applies to that request as well, and the undersigned recommends that the Court deny the motion to reconsider.

has directed his trademark infringement toward Texas, where its effects have been felt by Dryshod.

### 1. General jurisdiction

Neither party disputes that this Court lacks general jurisdiction over Wang. Defendant is a Chinse company with its principal place of business in China. A corporation is "essentially at home" where it has either its principal place of business or place of incorporation. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Defendant is not "essentially at home" in Texas and the Court may not exercise general jurisdiction. Accordingly, the undersigned addresses only specific jurisdiction.

### 2. Specific jurisdiction

"Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). For the Court to exercise specific jurisdiction, the Court must determine:

> (1) whether the defendant has minimum contacts with the forum state, i.e. whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). Defendants who "reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other state for

consequences of their actions." *Burger King*, 471 U.S. at 475. Establishing a defendant's minimum contacts with the forum state requires contacts that are more than "'random,' 'fortuitous,' or 'attenuated,' contacts or of the unilateral activity of another party or a third person." *Id.*

The parties dispute whether Wang[2] has minimum contacts with Texas. Wang does not dispute he is the owner of the DRYCODE mark, Dkt. 19, which he alleges he authorized the company "Dongguanshi Lituo Yundongyonpin Youxiangongsi" to use in U.S. commerce. *Id.* This company, which Wang testifies does business in the U.S. as "lituo sport," *id.*, is listed as the Amazon seller of the allegedly infringing boots delivered to Plaintiff Donohue's home in Austin, Texas, Dkt. 26-1. Plaintiffs argue that Wang's sales of the boots in Texas through Amazon is a sufficient basis for specific jurisdiction. Dkt. 26, at 10. Wang argues that he does not direct his business to Texas, but it is carried out by third party sellers.

In the recent Fifth Circuit case, *Admar Int'l, Inc. v. Eastrock, L.L.C*, the panel stated, "[m]erely running a website that is accessible in all 50 states, but that does not specifically target the forum state, is not enough to create the 'minimum contacts' necessary to establish personal jurisdiction in the forum state under *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The defendant must take the additional step of targeting the forum state in a manner

---

[2] There is some dispute about whether Wang is "Steven" or "Steve," however the evidence before the undersigned is sufficient to establish that both "Steven" and "Steve" were parties to the pre-suit Texas contacts. Mr. Donohue testified at the hearing that Wang identified himself to him at times as both "Steven" and "Steve." Dkt. 23. And, both "Steven" and "Steve" are copied on emails going back to 2019, at the time Wang solicited Dryshod's manufacturing business. Dkt. 25.

that reflects 'purposeful availment' of the opportunity to do business in that state."
18 F.4th 783, 785 (5th Cir. 2021) (citing *Burger King,* 471 U.S. at 475).

In *Admar*, the court applied *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*,
952 F. Supp. 1119 (W.D. Pa. 1997),[3] and found that without evidence of a sale of the
product in Louisiana, or other evidence that the defendant's "website specifically
targets Louisiana," mere access to the website in the forum alone was insufficient to
establish specific jurisdiction. 18 F. 4th at 787. Plaintiffs distinguish *Admar*, noting
that the court stated that the defendant had "never sold nor shipped a single accused
product to a Louisiana resident" and asserting that Defendants' contacts here include
actually selling products in the forum, engaging in extensive contacts with Dryshod,
which is based in Texas, and intentionally infringing Dryshod's trademarks in Texas,
where the harm is felt. Dkt. 26, at 13.

However, the sale in Texas that Plaintiffs rely upon to establish specific
jurisdiction as to sales of the infringing product in Texas is to Donohue's wife at his
home address. Dkts. 6-5, 25-9. This is an insufficient basis for specific jurisdiction.

---

[3] Under *Zippo*, a defendant has purposefully availed itself of the benefits and protections of
the forum state if it "enters into contracts with residents of [the] foreign jurisdiction that
involve the knowing and repeated transmission of computer files over the Internet." 952 F.
Supp. at 1124. It has *not* done so simply by posting information on a passive website. *Id.*
Between those extremes, purposeful availment turns on "the level of interactivity and
commercial nature of the exchange of information that occurs on the Web site." *Id.* Interactive
websites that allow Internet users to communicate and exchange information with the
organization sponsoring the site, such as is here, are in the middle of the spectrum. *Mink v.
AAAA Dev. LLC,* 190 F.3d 333, 336 (5th Cir. 1999). In this "middle ground," the exercise of
jurisdiction depends upon "the level of interactivity and commercial nature of the exchange
of information" conducted on the defendant's web site. *Id.* (quoting *Zippo*, 952 F. Supp. at
1124). "Personal jurisdiction under *Zippo* ... contemplates actual internet sales to forum
residents, not the theoretical possibility of sales." *Admar Int'l, Inc. v. Eastrock, L.L.C.*, No.
3:20-CV-00904, 2020 WL 6880966, at *6 (W.D. La. Oct. 23, 2020), *report and rec. adopted*,
2020 WL 6878346 (W.D. La. Nov. 23, 2020), *aff'd* 18 F.4th 783 (5th Cir. 2021).

*See Getagadget, L.L.C. v. Jet Creations Inc.*, No. 19-51019, 2022 WL 964204, at *5 (5th Cir. Mar. 30, 2022) (holding that in order to demonstrate that trademark infringement and unfair competition claims arose out of sales directed at Texas, Getagadget was required to show that those sales were to customers who could have been potentially deceived by the alleged infringement, and sales to the plaintiff's attorneys or other agents were improper attempts to manufacture contacts with the state); *Naughtys LLC v. Does 1-580*, No. 4:21-CV-492-O, 2022 WL 818993, at *7 n.16 (N.D. Tex. Mar. 3, 2022), *report and recommendation adopted*, 4:21-CV-00492-O, 2022 WL 816480 (N.D. Tex. Mar. 17, 2022) (collecting cases and stating "courts have repeatedly rejected attempts by Plaintiffs, as was done in this case, to manufacture contacts with the forum state by having an agent or investigator pose as a buyer and purchase the alleged infringing products.") A plaintiff's cause of action must arise out of or result from the defendant's forum-related contacts, and a sale of the Drycode product to Donohue's wife, who was not likely to be confused about the source of the product, does not qualify.[4]

Additionally, Plaintiffs rely on Wang's extensive pre-lawsuit business contacts with Dryshod as a basis for jurisdiction. Plaintiffs assert that Wang actively solicited Dryshod's business via direct communications with Dryshod's owner James Donohue

---

[4] There are cases stating that "a single sale of a trademarked product in violation of the Lanham Act in the forum is sufficient to establish personal jurisdiction." *Signtronix, Inc. v. General Sign, Inc.*, No. 3:06-CV-2244-L, 2007 WL 2398515, at *8 (N.D. Tex. Aug. 22, 2007) (quoting *Autotronic Controls Corp. v. Davis Techs. LLC*, No. EP-05-CV-22-DB, 2005 WL 1683595, at *2 (W.D. Tex. July 1, 2005)). However, in this case, Plaintiffs have not pointed to any sales other than to Ms. Donohue, which is an insufficient basis for specific jurisdiction as explained above.

as early as May 2019. Dkt. 6-1, at ¶ 17; Dkt. 6–6. Wang followed up multiple times via email, asking Donohue to visit Defendant's factory and to send Wang specifications for Dryshod's boots. Dkt. 6-1, at ¶ 18-19. Wang provided twenty pairs of boot samples to Dryshod from his factory, in an effort to solicit Dryshod's business. Dkt. 26-1, at ¶ 4 & Ex. 1. Defendant issued an invoice addressed to Dryshod in Austin, Texas for those samples and later shipped the samples to Dryshod's home in Austin, Texas. *Id.*, at ¶ 5. The evidence shows that Defendant engaged in all of these business contacts with Dryshod knowing that Dryshod is based in Texas. *See id.*, at ¶ 3.

But for specific jurisdiction, courts "look only to the contact out of which the cause of action arises …." *Revell v. Lidov*, 317 F.3d 467, 472 (5th Cir. 2002); *see also Bristol-Myers Squibbs Company v. Superior Court of California*, ⸺ U.S. ⸺, 137 S. Ct. 1773, 1781 (2017) ("[F]or a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy ... When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.") (cleaned up). In this case, Donohue's claims of trademark infringement do not arise from the pre-suit activities between Wang and Donohue. Plaintiffs do not claim those activities were illegal, just evidence of Wang's intent and opportunity to violate Plaintiffs' trademarks. The activities themselves are not the basis of Plaintiffs' claims and are insufficient to establish specific personal jurisdiction.

Plaintiffs next argue that Wang is intentionally infringing Dryshod's trademarks and Dryshod resides in Texas. As pointed out above, there is no evidence

that the Amazon site that sells Drycode's products is specifically aimed at Texas. As in *Admar*, the website is equally accessible in all fifty states. Plaintiffs' argument is based upon the fact that Wang knew that Dryshod was based in Texas when he allegedly infringed the mark.

Plaintiffs rely on two cases from the Northern District of Texas in support of their contention that personal jurisdiction is proper in the plaintiff's home forum where a defendant has intentionally infringed a mark: *First Fitness Int'l, Inc. v. Thomas*, 533 F. Supp. 2d 651, 655-57 (N.D. Tex. 2008), and *Carrot Bunch Co., Inc. v. Computer Friends, Inc.*, 218 F. Supp. 2d 820, 826 (N.D. Tex. 2002). In *Breakall v. Munn*, No. A-08-CA-485-LY, 2008 WL 11417063 (W.D. Tex. Oct. 9, 2008), however, Judge Yeakel rejected the argument that, in the absence of other contacts with the state, a trademark defendant's intentional injury to the plaintiff in Texas was sufficient to establish specific personal jurisdiction, stating that: "Such a result would completely vitiate the constitutional requirement of minimum contacts and purposeful availment." *Id.* at *4 (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 870 (5th Cir. 2001)). Even if true, the Court wrote, such allegations relate only to the foreseeability of an infringer's causing injury in Texas, which are insufficient to establish specific personal jurisdiction. *Id.* "The 'foreseeability that is critical to due process ... is that the defendant's conduct and connection with the forum State are such that [the defendant] should reasonably anticipate being haled into court there.'" *Id.* (quoting *Burger King,* 471 U.S. at 474); *see YETI Coolers, LLC v. Voyager Indus., Inc.*, No. 1:19-CV-692-RP, 2020 WL 919156,

at \*2 (W.D. Tex. Feb. 26, 2020), *report and recommendation adopted*, 1:19-CV-692-RP, 2020 WL 4589059 (W.D. Tex. Apr. 8, 2020). This argument fails.

Plaintiffs also rely on the Fifth Circuit's "stream-of-commerce" approach. In cases involving products sold or manufactured by foreign defendants, the Fifth Circuit applies the stream-of-commerce approach to personal jurisdiction. *Ainsworth v. Moffett Engineering, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013). The stream-of-commerce principle refers to "the regular and anticipated flow of products from manufacturer to distribution to retail sale." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 117 (1987).

In *Ainsworth*, the Fifth Circuit explained that, under the stream-of-commerce approach to personal jurisdiction, the minimum contacts requirement is met so long as the court "finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." *Id.* at 177. Under that test, "mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce," but "[t]he defendant's contacts must be more than 'random, fortuitous, or attenuated, or of the unilateral activity of another party or third person.'" *Id.* According to the Supreme Court, "although physical presence in the forum is not a prerequisite to jurisdiction, ... physical entry into the State – either by the defendant in person or through an agent, goods, mail, or some other means – is certainly a relevant contact." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014); *see Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d

465, 470 (5th Cir. 2006) ("Where a defendant knowingly benefits from the availability of a particular state's market for its products, it is only fitting that the defendant be amenable to suit in that state.")

In this case, the only evidence of a product placed into the stream of commerce that arrived in Texas is the boots purchased by Ms. Donohue, which the undersigned has explained above, is an insufficient basis for specific jurisdiction. Plaintiffs have not pleaded or offered evidence of other sales to Texas, the percentage of the sales in Texas, or any other evidence supporting a stream-of-commerce argument. *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 227 (5th Cir. 2012) (holding jurisdiction "did not arise out of or result from the relatively sparse contacts involving Lexware's fifteen internet website sales of its products to twelve Texas billing addresses."); *Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*, 106 F. Supp. 2d 895, 899 (N.D. Tex. 2000) (jurisdiction did not exist over a defendant company that had made only a "handful of sales, totaling less than $360, to Texas residents"); *cf. Nestle USA, Inc. v. Ultra Distribuciones Mundiales S.A. de C.V.*, 516 F. Supp. 3d 633, 643 (W.D. Tex. 2021) (finding jurisdiction where "according to bill of lading data, from July through December 2017, approximately $362,000 worth of Nestlé Mexico products were transferred from Ultra Mundiales to Ultra International and imported into Texas"); *Loloi, Inc. v. Lolo Imports, LLC*, No. 18-CV-2315-L-BK, 2019 WL 5887351, at *3 (N.D. Tex. Aug. 2, 2019), *report and recommendation adopted*, 3:18-CV-2315-L, 2019 WL 5887218 (N.D. Tex. Aug. 27, 2019) (listing

evidence of specific sales in the forum state to support its finding of specific jurisdiction).

Lastly, in the alternative, Plaintiffs assert that jurisdiction exists pursuant to Federal Rule of Civil Procedure 4(k)(2). Rule 4(k)(2) authorizes "personal jurisdiction over foreign defendants for claims arising under federal law when the defendant has sufficient contacts with the nation as a whole to justify the imposition of United States' law but without sufficient contacts to satisfy the due process concerns of the long-arm statute of any particular state." *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 720 (5th Cir. 1996) (emphasis omitted). For purposes of Rule 4(k)(2), the United States is the applicable forum for the minimum contacts analysis under general and specific personal jurisdiction. *See Patterson v. Aker Solutions Inc.*, 826 F.3d 231, 234 (5th Cir. 2016). "The court uses the same legal standards developed in the Fourteenth Amendment context—i.e., the minimum contacts analysis in the assertion of specific jurisdiction—but the United States is the relevant forum." *Fintech Fund, FLP v. Horne*, 327 F. Supp. 3d 1007, 1022 (S.D. Tex. 2018).

The plaintiff has the initial burden to "plead and prove the requisite contacts with the United States and plead Rule 4(k)(2)'s applicability ... but it [has] no burden to negate jurisdiction in every state." *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 499 (5th Cir. 2018). Once Plaintiffs meet that burden through prima facie evidence, the burden shifts to Defendant to "affirmatively establish that the court lacked personal jurisdiction under 4(k)(2) because there was a state where its courts of general jurisdiction could properly exercise jurisdiction over it" or that it has

insufficient contacts with the United States as a whole. *Id.* (citing *Adams v. Unione Mediterranea Di Sicurta*, 346 F.3d 646, 650 (5th Cir. 2004)).

Because Wang has not conceded to jurisdiction in another state and there is no dispute that Plaintiff's claims arise under federal law, the Court may have personal jurisdiction under Rule 4(k)(2) if Wang has sufficient ties with the United States to satisfy due process. *Adams*, 364 F.3d at 651. As evidence, Plaintiffs cite the fact that Wang's brochure describes his "North American markets" and the fact that his products are for sale on Amazon in the United States, demonstrating his contacts with the nation as a whole. Dkt. 26, at 14 n.7.

This evidence, however, is insufficient to establish any ties that Wang has with any other state or states beyond the one sale of the allegedly infringing product to Donohue's wife in Texas as detailed herein. The undersigned finds that Plaintiffs have failed to plead and establish that Wang has the requisite contacts with the United States to apply this basis of jurisdiction. Rule 4(k)(2) does not provide the undersigned with personal jurisdiction over Wang.

## IV.    RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **DENY** Defendant Zhenyin Wang's Motion to Dismiss for Insufficient Service of Process Under Rule 12(b)(5), **DENY** Defendant Zhenyin Wang's Motion to Reconsider the Court's July 22, 2022, Order Under Rule 54(b), and **GRANT** Defendant Zhenyin Wang's Combined Motion to Dismiss for Lack

of Personal Jurisdiction Under Rule 12(b)(2), Dkt. 18 and **DISMISS**[5] this cause of action for lack of personal jurisdiction **WITHOUT PREJUDICE.**

## V.    WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED September 7, 2022.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATGE JUDGE

---

[5] This Report and Recommendation disposes of the entire case, including Plaintiffs' pending Motion for Preliminary Injunction.