# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# DIVISION

| | |
|---|---|
| JAMES K. DONOHUE and DRYSHOD INTERNATIONAL, LLC, *Plaintiffs* § § § § | No. 1:22-CV-00583-DAE |
| v. § § | |
| ZHENYIN "STEVEN" WANG dba DRYCODE *Defendant* § § § § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE DAVID A. EZRA
      UNITED STATES DISTRICT JUDGE

Before the Court is Plaintiffs' Motion for Contempt Sanctions and for Modification of Preliminary Injunction Order, Dkt. 65, and all related briefing. The undersigned held a hearing on September 5, 2023.[1] After considering the arguments of the parties at the hearing, the filings and the relevant case law, the undersigned issues the following report and recommendation.

## I.   BACKGROUND

Plaintiffs James K. Donohue and Dryshod International, LLC, own and sell a brand of premium waterproof footwear and accessories under the federally registered mark DRYSHOD. Defendant Zhenyin Wang, a Chinese resident, sells an alleged knockoff version of Dryshod's footwear under the mark DRYCODE. Plaintiffs allege

---

[1] At the hearing, the undersigned orally denied Wang's Motion to Stay Preliminary Injunction Pending Appeal, Dkt. 63, for the reasons stated on the record.

1

this mark infringes theirs, that Wang is engaging in unfair competition under the Lanham Act, and requested a preliminary injunction from the Court. After initially finding a lack of personal jurisdiction over Wang, the undersigned ultimately issued a Report and Recommendation finding the court has personal jurisdiction over him, Dkt. 47, which was approved and adopted by the District Court. Dkt. 55. The undersigned issued a second Report and Recommendation recommending entering a preliminary injunction, Dkt. 48, which was also approved and adopted by the District Court. Dkt. 56.

Plaintiffs now move for sanctions arguing that Wang has failed to comply with the Court's June 21, 2023, order enjoining all use of the mark DRYCODE. Plaintiffs assert infringing DRYCODE product listings and advertisements remain on numerous U.S. platforms, including Amazon, Walmart, Facebook, Instagram, and eBay, and that sales of the infringing goods to U.S. consumers continue, in direct violation of the Court's injunction. Dkt. 65, at 2.

Plaintiffs argue that Wang has tried to evade the Court's injunction by claiming that he "sold" the DRYCODE marks. This allegedly occurred two weeks after the preliminary injunction hearing on August 22, 2022, but he did not mention the sale until June 2023, after injunctive relief was entered by the Court. Additionally, Plaintiffs argue that despite his claims of a sale, Wang has continued to hold himself out as the mark owner, including in this Court and in the U.S. Patent and Trademark Office, remaining the registrant-owner of the DRYCODE marks in the USPTO.

Lastly, any sale was to a company Wang or his family controls, as his wife is the listed owner.

Plaintiffs point out that the existing injunction binds entities in "active concert or participation" with Defendant, Fed. R. Civ. P. 65(d)(2)(C), including any company to which he allegedly sold the mark. Plaintiffs request the Court modify the preliminary injunction to make it stronger, and explicitly include parties acting in concert with Wang. Plaintiffs additionally request contempt sanctions, attorney's fees, and costs of bringing and enforcing this motion.

Wang responds that he complied with the preliminary injunction because he is no longer the owner of the DRYCODE trademark. He asserts he indicated this to Plaintiffs and to the Court through an Advisory, Dkt. 61, stating that he sold the DRYCODE trademark to "Third Party" Lituo Yundongyongpin Youxiangongsi. Dkt. 67, at 1. Wang asserts that is in compliance with the Preliminary Injunction Order, as he has not manufactured, marketed, imported, distributed, or sold of any products with DRYCODE mark in the United States. Dkt. 61-1. And Wang asserts, he provided a copy of the preliminary injunction order to Lituo, and thus he asserts, has fully complied with the preliminary injunction. Dkt. 61, at 2.

## II.    LEGAL STANDARDS

"[C]ourts[2] have inherent power to enforce compliance with their lawful orders through civil contempt." *Spallone v. U.S.*, 493 U.S. 265, 276 (1990); *see also In re*

---

[2] A magistrate judge "may only certify to the district court (or deny certification of) facts possibly constituting contempt." *Castaneda v. Falcon*, 166 F.3d 799, 801 (5th Cir. 1999). Accordingly, pursuant to 28 U.S.C. §§ 636(b)(3) and 636(e)(6)(B)(iii), a magistrate judge has

*Bradley*, 588 F.3d 254, 265 (5th Cir. 2009) ("[C]ivil contempt remains a creature of inherent power."). Civil contempt services two purposes: "It can be used to enforce compliance with a court's order through coercion, or it can be used to compensate a party who has suffered unnecessary injuries or costs because of contemptuous conduct." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961-62 (5th Cir. 1995). "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Id.* The moving party bears the burden of proving civil contempt, by clear and convincing evidence. *Topletz v. Skinner*, 7 F.4th 284, 299 (5th Cir. 2021); *Whitcraft v. Brown*, 570 F.3d 268, 271 (5th Cir. 2009). A party seeking a contempt finding must establish "(1) that a court order was in effect, and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." *F.D.I.C. v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995). "The only issue in a civil contempt hearing is the respondent's compliance with the court's order; noncompliance can be contemptuous even [in] the absence of the respondent's willfulness." *Travelers Cas. and Sur. Co. of Am. v. Padron*, No. SA-15-CV-200-DAE, 2017 WL 8895641, at *5 (W.D. Tex. Aug. 31, 2017).

Modification of an injunction is appropriate when the legal or factual circumstances justifying the injunction have changed. *Baum v. Blue Moon Ventures*, 513 F.3d 181, 190 (5th Cir. 2008). In particular, a district court may modify an injunction to impose more stringent requirements on the defendant when "the

---

"the requisite constitutional and statutory authority" to issue a report and recommendation on a motion for contempt. *F.D.I.C. v. LeGrand*, 43 F.3d 163, 168 (5th Cir. 1995).

4

original purposes of the injunction are not being fulfilled in any material respect."

*Exxon Corp. v. Tex. Motor Exch. of Houston, Inc.*, 628 F.2d 500, 503 (5th Cir. 1980).

### III. DISCUSSION

#### A. Contempt

The Court's June 21, 2023, order stated:

> Until the Court enters judgment in this case, Wang is hereby ENJOINED from (1) all use of the infringing DRYCODE mark (and any other marks confusingly similar to Dryshod's) in the United States; and (2) all manufacturing, marketing, importation, distribution, and sale of Infringing Products in the United States.

Dkt. 56, at 2.

Plaintiffs argue that Wang remains the owner of the DRYCODE marks in the USPTO; thus, he is legally responsible for their use. *See Sheila's Shine Prods., Inc. v. Sheila Shine, Inc.*, 486 F.2d 114, 123-24 (5th Cir. 1973) ("The owner of a trademark has not only a right to license the use of his trademark to others, but also a concurrent duty to exercise control and supervision over the licensee's use of the mark."). Plaintiffs cite evidence Wang's infringing goods continued to be marketed and sold through numerous U.S. points-of-sale directed at U.S. consumers. Dkts. 65-1, 65-2, 65-3. Plaintiffs also cite evidence that Wang remains the registered U.S. trademark owner of the relevant mark, despite his claims of a sale. Dkts. 65-7, 65-8. Plaintiffs assert that because he is still the owner of the mark, Wang should be held in contempt for the continued use in violation of the Court's preliminary injunction.

Wang's response is supported solely by his own Declaration. Dkt. 67-1. He asserts that, "even though Yuli Li is still legally Defendant's wife, both Defendant and Ms. Li have separated. Since Defendant decided to separate from Yuli Li,

5

Defendant also sold his shares in Lituo to Yuli Li." *Id.*, at ¶ 6. He also asserts that "Defendant's August 2022 transfer of the DRYCODE trademark to Lituo was also a result of the separation. Defendant has no relationship with Lituo since the transfer of trademarks and shares." *Id.*, at ¶ 7. Thus, he argues, the use of the DRYCODE mark is out of his control, and he cannot be held responsible.

The clear and convincing evidence before the undersigned supports a finding of contempt. On July 18, 2023, after the recommendation of injunctive relief was entered, Wang notified the Court that he had sold the DRYCODE trademark to "a third party company named Lituo Yundongyongpin Youxiangongsi" "at the end of August 2022." Dkt. 61. He did not clarify that the owner of this company was his wife or any relation at all. Further, he has repeatedly represented in filings made in this Court *after* the sale that he remains the mark's owner. For instance, days after the sale he alleged that Lituo was a "third party store" that sells "products bearing Defendant's USPTO registered Mark." Dkt. 27. Similarly, on June 2, 2023, months after the alleged sale, Wang represented in filings that he still owned the DRYCODE mark and that Lituo was merely an authorized seller. Dkt. 50, at 6 ("Defendant only authorized a third-party seller of his trademark 'DRYCODE.'") This lack of consistency in his representation of non-ownership is bolstered by the fact that Wang recently filed a motion to stay the injunction of his use of the DRYCODE trademark in this case, which he would not have standing to do if he did not have an ownership interest in the mark. Dkt. 63.

6

Plaintiffs cite additional representations by Wang supporting that he still controls the DRYCODE mark after the alleged sale. The evidence in the record supports that despite his claims, Wang remained the registered U.S. trademark owner of the relevant mark long after any alleged sale. Dkts. 65-7, 65-8. Wang also represented to the USPTO as recently as June 15, 2023, that he owns the DRYCODE marks, submitting a letter of authorization to the USPTO attesting that he is the "DRYCODE trademark holder" and authorizing a different applicant to use the similar mark, DG DRYCODE GEAR. Dkts. 65-1, 65-8. Additionally, Wang's discovery responses support that he controls the DRYCODE mark. In discovery responses served after the purported sale he represents that he authorizes Lituo to sell Defendant's DRYCODE goods. Dkts. 65-1, 65-9, 65-10.

Moreover, the evidence supports that Lituo, the putative buyer of the mark, is acting in concert with if not controlled by Wang. Publicly available business records from China show that until September 5, 2022, after the alleged sale, Wang was a major shareholder of Lituo. Dkts. 65-14, 65-14, 65-17. Additional public records from China also show that, on September 5, 2022, Defendant transferred his shares in Lituo to an individual named Yuli Li. Dkts. 65-14, 65-15. Counsel stated at the hearing that "Yuli Li" is Wang's wife. The records also show that Wang was the manager and executive director of Lituo until October 13, 2022, when those positions were likewise transferred to Yuli Li. Dkts. 65-14, 65-17. Wang and Yuli Li are together the primary owners and shareholders of a different Chinese company called Dongguan Lu Xuan Trading Company LTD. Dkts. 65-16. Lu Xuan Trading Co. is

responsible for creating Defendant's infringing DRYCODE products in China, placing factory orders for the infringing products, and paying the factories in China to manufacture the infringing products. Dkt. 65-12. The evidence supports that Lituo is at a minimum working in concert with Wang.

The clear and convincing evidence establishes that Wang and his cohorts are in contempt of the Court's order. The undersigned finds that Plaintiffs have established that: (1) a preliminary injunction order was in effect, Dkt. 56: (2) that order required Want to stop using the DRYCODE marks; and (3) Wang failed to comply with the Court's order. *See F.D.I.C.*, 43 F.3d at 170. Additionally, to the extent Lituo possibly legitimately bought the marks, they are still bound by the injunction. Fed R. Civ. P 65(d)(2)(C) (extending injunctions to those in "active concert or participation" with the parties who have notice of the injunction)  And to the extent the alleged sale is illigitimate and Wang is the owner, Wang is responsible for the use of the DRYCODE marks. *See Denison Mattress Factory v. Spring-Air Co.*, 308 F.2d 403, 409 (5th Cir. 1962) ("Of course, the licensee acquires only the right to a limited use of the trademark and the control, right and title to the product remains in the licensor.").

As the undersigned finds Wang has violated the Court's preliminary injunction, and is in contempt, it must fashion appropriate sanctions. Plaintiffs request that the Court: (1) compel Wang and those "in active participation" with him, including Lituo, to comply with the injunction within seven days; (2) fine Wang $250

per each day he does not comply; and (3) order Wang to pay Plaintiffs' costs and fees expended to obtain compliance and in preparing the motion. Dkt. 65, at 13.

A civil contempt fine must be either compensatory or coercive. *Big Thirst, Inc. v. Donoho*, 1-22-CV-467-RP, 2022 WL 2438172, at *3 (W.D. Tex. July 2, 2022), *report and recommendation adopted*, 1:22-CV-467-RP, 2022 WL 18034362 (W.D. Tex. Oct. 17, 2022) (citing *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 396 (5th Cir. 2004)). The Fifth Circuit requires that the district court use "the least onerous sanction which will address the offensive conduct." *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 78 (5th Cir. 2011) (quoting *Gonzalez v. Trinity Marine Grp.*, 117 F.3d 894, 899 (5th Cir. 1997)).

The undersigned finds that sanctions are necessary to enforce future compliance with the Court's permanent injunction. Thus, the undersigned recommends that the District Court order Wang and those acting in "active concert or participation" with him, including Lituo, to comply with the Court's injunction within seven days of the date this Report and Recommendation is ruled upon. Additionally, the undersigned recommends that Wang be ordered to pay Plaintiffs' costs and reasonable attorneys' fees expended to obtain his compliance with the preliminary injunction, including Plaintiffs' costs and reasonable fees in preparing the instant motion.

The undersigned declines at this point to recommend imposition of a daily fine for failure to comply but warns Wang and anyone acting in concert with him, that the continued failure to comply with the Court's injunction or may lead to the further

imposition of sanctions, including monetary sanctions, disgorgement of profits from sales of the offending products, or the entry of a permanent injunction in Plaintiffs' favor. *See Bd. of Supervisors of the La. State Univ. v. Smack Apparel Co.*, 574 F. Supp. 2d 601, 606 (E.D. La. 2008).

### B. Modification of Injunction

Plaintiffs also request the Court to modify the injunction to specifically apply to any buyer of the DRYCODE marks. First, Plaintiffs request that the Court should reiterate that the existing injunction applies to entities in "active concert or participation" with Defendant, including Lituo. Fed. R. Civ. P. 65(d)(2)(C). Second, Plaintiffs request that the Court modify the language of the injunction order to explicitly clarify that the injunction covers Defendant's successors, assigns, and licensees to the DRYCODE marks, and any affiliated companies, because otherwise "the original purposes of the injunction are not being fulfilled in any material respect." *Exxon Corp.*, 628 F.2d at 503. Plaintiffs point out that any injunction of use of a mark could simply be bypassed through sale of the mark, if Wang's argument prevails.

Wang responds that the Court does not have the authority to modify an injunction that is on appeal, as the court is divested of jurisdiction. Dkt. 67, at 6. Plaintiffs rely on Federal rule of Civil Procedure 62(d) which states:

> Injunction Pending an Appeal. While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

Fed. R. Civ. P. 62(d). Further, Plaintiffs assert in this case, that modifying the injunction would not change it, but help preserve the status quo, which is permitted by the Fifth Circuit. *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 578 (5th Cir. 1996) (affirming district court's jurisdiction to amend a preliminary injunction pending appeal because it was "more appropriately characterized as a modification—as opposed to a dissolution" and because it "maintain[ed] the status quo."); *Coastal Corp. v. Texas Eastern Corp.*, 869 F.2d 817 (5th Cir. 1989). The undersigned finds that it has the authority to modify the preliminary injunction.

Accordingly, the undersigned recommends that the District Court modify the preliminary injunction to compel Defendant and those in "active concert or participation" with him, Fed. R. Civ. P. 65(d)(2)(C), including Lituo, to comply with the injunction within seven days of the date the District Court acts on this Report and Recommendation; and modify the language of the injunction to explicitly apply to Defendant's successors, assigns, licensees, and affiliated companies.

## IV. RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **GRANT** Plaintiffs' Motion for Contempt Sanctions and for Modification of Preliminary Injunction Order, Dkt. 65.

It is **RECOMMENDED** that Wang and those acting in "active concert or participation" with him, including Lituo, **BE ORDERED** to comply with the Court's

11

injunction within seven days of the date this Report and Recommendation is ruled upon. Failure to comply may result in further sanctions.

Additionally, the undersigned **RECOMMENDS** that Wang be ordered to pay Plaintiffs' costs and reasonable attorneys' fees expended to obtain his compliance with the preliminary injunction, including Plaintiffs' costs and reasonable attorneys' fees in preparing the motion now under consideration. Plaintiffs should move for their costs and attorneys' fees by separate order.

It is **RECOMMENDED** that the District Court **MODIFY** the preliminary injunction language, found in Dkt. 56, to include Defendant Wang and those acting in "active concert or participation" with him including Lituo. It is **FURTHER RECOMMENDED** that the District Court **MODIFY** the language of the preliminary injunction to explicitly apply to Wang's successors, assigns, licensees, and any affiliated companies of Wang or his successors, assigns, licensees.

The referral to the undersigned is **CANCELED**.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review

by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED September 28, 2023.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATGE JUDGE